IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ISHTIAQ A. MALIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 1:20-cv-00091 (RDA/TCB) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HEALTH & HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Department of Health & Human Services' ("Defendant") Motion for Summary Judgment (Dkt. 18). The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The Motion is now ripe for disposition. Considering the Motion together with Defendant's memorandum in support of the Motion (Dkt. 19); Plaintiff Ishtiaq Malik's ("Plaintiff") Opposition (Dkt. 34); and Defendant's Reply (Dkt. 35), it is hereby ORDERED that Defendants' Motion for Summary Judgment is GRANTED for the reasons that follow.

### I. BACKGROUND

Although the parties dispute certain facts, the following facts are uncontested except where noted.

Prior to 2015, Plaintiff practiced primary care and nuclear cardiology across multiple locations in Washington, D.C. and Maryland. Dkt. 17-3 at 22. On July 27, 2012, the United States Government, the State of Maryland, and the District of Columbia commenced a civil action against Plaintiff. *See United States v. Malik*, No. 1:12-v-1234 (D.D.C.), Dkt. 1. The complaint alleged

under the False Claims Act, among other statutes, that from January 2006 until December 2010, Plaintiff "knowingly submitted false claims . . . to Medicare, Medicaid, TRICARE, and the Federal Employee Health Benefits Program, for cardiovascular nuclear medicine services" because he "improperly billed nuclear stress test services and billed for services not provided" even after "being instructed by [his] Medicare contractor that the[] billings were improper." *Id.* ¶¶ 2-4. On July 30, 2013, the U.S. District Court for the District of Columbia granted partial summary judgment against Plaintiff including allegations under the False Claims Act. *Id.*, Dkt. 47. The court entered final judgment against Plaintiff for a total of $17,468,767.38. *Id.*, Dkt. Nos. 48-51. On January 20, 2015, the U.S. Court of Appeals for the District of Columbia Circuit dismissed Plaintiff's appeal. *United States v. Malik*, No. 13-5355, 2015 WL 653166 (D.C. Cir. Jan. 20, 2015).

On September 3, 2014, the Health and Human Services' Office of the Inspector General ("OIG") sent Plaintiff a notice of intent ("NOI") to exclude him from participation in certain federal health programs pursuant to 42 U.S.C. § 1320a-7(b)(7). Dkt. 17-3 at 1-3. In the NOI, the OIG described the same set of allegations outlined in the complaint brought against Plaintiff in the federal civil action and notified Plaintiff that he had 30 days to "submit documentary evidence or written argument concerning whether the proposed exclusion [was] warranted." *Id.* at 3. The OIG also sent an electronic copy of the NOI to Plaintiff's then counsel, Mr. Ronald Schwartz, on September 5, 2014, and Mr. Schwartz transmitted it to Plaintiff's email within an hour of receipt. Dkt. 17-3 at 4. On September 30, 2014, Plaintiff retained a new attorney, Mr. Barry Coburn, and Mr. Coburn sent the OIG notice of Plaintiff's new representation in the matter while also requesting an extension to respond to the NOI. *Id.* at 11-13. The OIG extended the response deadline until October 20, 2014. Dkt. 17-4 at 12-13. Plaintiff, through counsel, then e-mailed a

response to the OIG on December 1, 2014, outlining why the proposed exclusion was unwarranted and describing the letter as a memorialization of the arguments raised in a meeting that occurred on November 13, 2014 between Mr. Coburn and the OIG.  Dkt. 17-4 at 19-23.

On January 18, 2015, Plaintiff emailed Mr. Coburn in response to receiving a discounted invoice from Mr. Coburn: "I am relocating to Pakistan and do want want [*sic*] to pursue any further any of my cases any further.  I appreciate the discount you gave to me.  Can you tell me when I can pick up the check?  I need money to make arrangement for dispatch my personal belongings to Pakistan."  Dkt. 17-3 at 18.  Mr. Coburn followed up on January 20, 2015 to confirm that Plaintiff mistakenly meant to say he did *not* want to pursue any further any of his cases.  *Id.* at 20.  Nothing in the Administrative Record reveals Plaintiff's response.  The OIG then transmitted a formal notice of proposed exclusion ("NOPE") dated February 4, 2015 to Mr. Coburn and his legal team on February 5, 2015, inquiring whether the original NOPE should be sent to Mr. Coburn's attention or directly to Plaintiff.  *Id.* at 27-33.  That day, Mr. Coburn responded that the original could be sent to his attention rather than to Plaintiff.  *Id.* at 34.  Minutes later, Mr. Coburn forwarded the OIG's email regarding the NOPE to Plaintiff's email address, attempting to discuss its contents over phone despite Mr. Coburn's view that Plaintiff instructed him "not to do any more work on anything."  *Id.* at 36.  Again, the Administrative Record is devoid of any response from Plaintiff.

In the NOPE, the OIG found that Plaintiff's actions had "resulted in serious financial harm to [] federal health care programs," amounting to $2,602,473.08 over the course of approximately five years, recommending an exclusion from participation in any federal health care programs for 17 years.  *Id.* at 21-24.  The OIG also detailed the Administrative Law Judge ("ALJ") hearing request process, including the requirement that Plaintiff submit such a request within 60 days from

receipt of the NOPE. *Id.* at 25. On May 11, 2015, having received no such request for an ALJ hearing, the OIG issued an official notice of exclusion to Plaintiff. *Id.* at 38-39.

Plaintiff resurfaced on November 23, 2018 through new representation requesting an ALJ hearing. In that request, Plaintiff claimed he never received the NOPE Mr. Coburn had purportedly forwarded him and instead learned of the NOPE as a result of corresponding with his Maryland senator's office. Dkt. 17-1 at 17-41. The OIG moved to dismiss the request as untimely and questioned Plaintiff's credibility. *Id.* at 72-86. Plaintiff opposed. *Id.* at 92-116.

The presiding ALJ dismissed Plaintiff's request for a hearing on April 3, 2019. *Id.* at 1-7. In its decision, the ALJ found that service of the NOPE upon Mr. Coburn was akin to service upon Plaintiff, that Plaintiff's email to Mr. Coburn conveyed a clear desire "to abandon all of his appeals," and that the record questioned Plaintiff's supposed lack of knowledge regarding the NOPE. *Id.* Lastly, the ALJ held that Plaintiff's request for a hearing was untimely irrespective of whether Mr. Coburn forwarded the actual NOPE electronically to Plaintiff. *Id.* at 6.

Plaintiff timely appealed to the Departmental Appeals Board ("DAB"). Dkt. 17-2 at 1-16. Following a second round of briefing, the DAB affirmed the ALJ's dismissal on August 1, 2019. Dkt. 17-1 at 8-16. In its decision, the DAB concluded that the OIG's email to Mr. Coburn containing the NOPE constituted sufficient notice to Plaintiff in "the absence of any notice from either [Plaintiff] or [Mr.] Coburn of a change in the status of the attorney-client relationship." *Id.* at 13-14. The DAB further held that the ALJ's determination was supported by "substantial evidence" that Plaintiff "received notice of his proposed exclusion on February 5, 2015" and Plaintiff's supposed inability to understand Mr. Coburn's communications was "not credible." *Id.* at 14-15.

4

Plaintiff, proceeding *pro se*, filed his Petition for Review with the U.S. Court of Appeals for the Federal Circuit on September 27, 2019. Dkt. No. 1-2 at 1. On January 28, 2020, the Federal Circuit transferred the case to this Court. Dkt. Nos. 1-1 at 1. Per this Court's Order, Plaintiff then filed an Amended Complaint on September 8, 2021 consistent with the Federal Rules of Civil Procedure. Dkt. Nos. 9; 14. On October 14, 2021, Defendant filed a Motion for Summary Judgment, a supporting memorandum, and a *Roseboro* notice. Dkt. Nos. 18; 19; 20. Upon the Court's order granting an extension of time, Plaintiff filed his opposition brief on November 30, 2021. Dkt. Nos. 22; 28. On March 30, 2022, this Court struck Plaintiff's brief for failure to comply with the Local Civil Rules and ordered Plaintiff to refile a compliant opposition brief within 30 days of the Order. Dkt. 33. Plaintiff filed a compliant brief on April 29, 2022. Dkt. 34. Defendant filed a reply on May 6, 2022 in compliance with this Court's scheduling order. Dkt. 35.

## II.  STANDARD OF REVIEW

### A.  Rule 56 Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing

party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

III.  ANALYSIS

Plaintiff's Amended Complaint seeks judicial review of the DAB's final determination, arguing that the decision "overlooked" the evidence presented. Dkt. 14 at 2.  Plaintiff further petitions this Court to admit new evidence related to an alleged action Plaintiff has brought against Mr. Coburn before the D.C. Bar.  Ultimately, Plaintiff argues that he did not receive any attachment in the message forwarded to him from Mr. Coburn containing the NOPE and that when Mr. Coburn called him to confirm receipt, Plaintiff told him he "no longer represents him, and [P]laintiff dropped off [the] call immediately." Dkt. 34 at 5.  Plaintiff then claims he returned to the United States in April of 2018, when he met with Mr. Coburn in his office and Mr. Coburn "wanted [a] new contract to represent [Plaintiff]." *Id.*  However, Plaintiff "declined his legal services." *Id.* Plaintiff next raises a number of grievances against Mr. Coburn's handling of his case in the civil action brought against him in the U.S. District Court for the District of Columbia.  Plaintiff then turns to the underlying merits of the OIG's NOPE and argues that HHS "abused [its] discretionary power" by enforcing a 17-year exclusionary period against him. *Id.* at 6.

Defendant argues that both of the DAB's findings are supported by substantial evidence and therefore this Court should not encroach upon its final determination.  Defendant maintains that the DAB reasonably found that Plaintiff had received the NOPE on February 5, 2015 because (1) the OIG reasonably understood Mr. Coburn to be Plaintiff's legal counsel at that time and (2) Mr. Coburn transmitted the NOPE to Plaintiff the same day by forwarding an email that included the NOPE as an attachment.  Nor has Plaintiff objected to the finding that he retained Mr. Coburn to act as his counsel for the exclusion proceedings in light of the engagement letter he signed with Coburn on September 30, 2014.  Lastly, as to Plaintiff's allegations against Mr. Coburn and any related new evidence he wishes to present before this Court, Defendant argues that Plaintiff's

additional evidence related to certain allegedly untoward actions by Mr. Coburn does not meet the requisite materiality standard that would allow it to be considered by this Court.

The Social Security Act provides that the Secretary of HHS may exclude individuals and entities from participating in any federal health care program. *See* 42 U.S.C. §§ 1320a-7(a)-(b). Those that have been convicted of certain criminal offenses such as health care fraud generally must be excluded for a period of at least five years. *Id.* § 1320a-7(c)(3)(B). For other grounds enumerated in § 1320a-7(b), exclusion remains within the discretion of the Secretary, including for "fraud, kickbacks, and other prohibited activities" as well as making "any false statement, omission, or misrepresentation of a material fact in any application, agreement, bid, or contract to participate or enroll" in a federal health care program. *Id.* §§ 1320a-7(b)(7), (16). Within these discretionary exclusions, Congress has provided guidelines for the Secretary's determination as to the appropriate length. *See id.* §§ 1320a-7(c)(3)(C)-(F); 42 C.F.R. § 1001.201(b).

HHS has delegated the authority to propose and enforce exclusions to its OIG. *See* 42 C.F.R. § 1001.1(b). The process of noticing a proposed exclusion is well-detailed under statute. Before instituting any exclusions from federal health care programs, the OIG must deliver reasonable notice to the targeted individual, who retains the right to challenge the exclusion first before the Secretary and then before an Article III court. *See* 42 U.S.C. § 1320a-7(f)(1). As part of that notice, the OIG must provide the "basis" and "effect" of the proposed exclusion. 42 C.F.R. § 1001.2001(a). The individual then has 30 days to "submit documentary evidence and written argument concerning whether the exclusion is warranted." *Id.* If the OIG finds that the proposed exclusion remains warranted, it will send a NOPE outlining the "basis," "length," and "effect" of the exclusion. *Id.* §§ 1001.2002(c); 1001.2003(a). Under HHS DAB policy, service of the NOPE upon an individual's counsel, without any reason to believe the individual's relationship with

8

counsel is "unusual," constitutes service upon the individual. *See Barran v. Insp. Gen.*, No. 1776, 2001 WL 651157, at **2-3 (H.H.S. May 17, 2001).

"[W]ithin 60 days after the [NOPE] . . . is received," the individual must file before the HHS Departmental Appeals Board ("DAB") a written request for a hearing before an ALJ. 42 C.F.R. § 1005.2(c). There is no "good cause exception" appended to this "strict filing deadline." *Maiorano v. Thompson*, No. 04-2799, 2008 WL 304899, at *3 (D.N.J. Feb. 1, 2008). And the individual or her counsel is presumed to have received the NOPE within 5 days "unless there is a reasonable showing to the contrary." 42 C.F.R. § 1005.2(c). If the OIG receives no response within the prescribed time limits, the OIG delivers a final notice of exclusion effecting the prior proposed exclusion. *See id.* § 1001.2003(a). But any timely response received by the OIG commences a proceeding before the ALJ between the OIG and the individual. *Id.* §§ 1001.2007; 1005.2(b). Either party may then appeal the ALJ's decision to the DAB within 30 days of that ruling. *Id.* § 1005.21(a). The DAB's decision constitutes a final determination subject to judicial review upon a timely appeal. *Id.* §§ 1005.21(i)-(j); *id.* § 1005.21(k)(1) (imposing a 60-day appeal requirement and adding 5 days if mailed).

The Secretary's decision to exclude a medical practitioner from access to federal health care programs faces the same standard of review as a Social Security agency determination. *See Marshall v. Sec'y of Dep't of Health and Human Servs.*, No. 3:17-cv-1382, 2019 WL 2895668, at *3 (D. Conn. Mar. 11, 2019). Upon review of the HHS DAB final determination, this Court is limited by Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which requires "uphold[ing] the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). "[M]ore than a mere scintilla" of evidence must support the ALJ and DAB's findings. *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). But that low evidentiary bar does not invite this Court to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the" DAB. *Craig*, 76 F.3d at 585; *see also Century Care of Crystal Coast v. Leavitt*, 281 F. App'x 180, 182 (4th Cir. 2008) (applying substantial evidence inquiry in an HHS appeal solely to the DAB's findings). "[I]n performing its limited function," this Court is "restricted to the administrative record." *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc); *see also Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963)) ("[I]n determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ.").

The record is demonstrably clear that Plaintiff failed to timely request a hearing before the ALJ on the *merits* of his exclusion. As the DAB correctly found, it is an undisputed material fact that Plaintiff did not seek to challenge the NOPE until November 23, 2018—years after the April 2015 deadline to timely contest. *See* 42 C.F.R. § 1005.2(c). This Court therefore must ask whether the DAB's dismissal of Plaintiff's request was supported by substantial evidence.

Plaintiff's argument hangs on rebutting the presumption of receipt of the NOPE by making a "reasonable showing to the contrary." *Id.* Well-settled law establishes a rebuttable presumption that service upon counsel constitutes service upon a party. *See Barran*, 2001 WL 651157, at *2 (holding that "without notice of a change in Petitioner's circumstances relative to counsel, [the HHS] I.G. could reasonably rely" on serving counsel in effecting service upon the petitioner); *Gary Grossman v. Inspector General*, No. 2267, 2009 WL 2973479, at *9 (H.H.S. Aug. 25, 2009)

(finding effective service where petitioner's counsel received the NOPE and that there was good reason to believe counsel was representing petitioner at the time of receipt); *see also Asan v. Bureau of Citizenship and Immigr. Servs.*, 250 F. App'x 458, 459 (2d Cir. 2007) (raising a presumption of proper notice upon service of counsel); *Palushaj v. Gonzales*, 134 F. App'x 14, 16-17 (6th Cir. 2005) (applying same principle to immigration proceedings); *Crespo v. Mort. Elec. Reg. Sys., Inc.*, No. 1:16-cv-00043, 2017 WL 1190381, at *3 (W.D.N.C. Mar. 29. 2017) (noting that service upon counsel is effective as service upon a party provided that party has appointed the attorney as his agent); *Kreinberg v. WMAR, Inc.*, No. N-78-2344, 1979 WL 196, at *2 (D. Md. Mar. 30, 1979) (noting by reverse inference, in the EEOC context, that service upon counsel may be sufficient notice when the EEOC considers counsel to be the authorized representative of the plaintiff).

Here, there is substantial evidence in the Administrative Record relied upon by the DAB which reveals that Mr. Coburn (a) received an electronic copy of the NOPE on the morning of February 5, 2015 and (b) forwarded this notice to Plaintiff that same day.[1] That Plaintiff argues, without proof, there was no attachment in the forwarded email is unavailing. Nothing in the record compels this Court to stray from adopting as reasonable the DAB's view that forwarding an email with an attachment necessarily implies the attachment was sent to the recipient. *See* Dkt. 17-1 at

---

[1] Not lost on this Court is the undisputed material fact that the OIG sent the NOPE by certified first class mail to the Plaintiff at his practice address in Silver Spring, Maryland and that the letter was *not* returned undeliverable. Dkt. 17-1 at 2. This was the last known address provided to the OIG and to which the NOI had previously been sent. Dkt. 17-1 at 9. While Plaintiff explains that he never received the hard copy service of the NOPE or NOE because he had sold his medical practice months prior in his return to Pakistan, Dkt. 17-1 at 11, 19, it is incumbent upon the Plaintiff to update his mailing records for the OIG. To hold otherwise would provide an easily abused workaround in seeking to dismiss legal proceedings on procedural grounds.

13-14. Indeed, it is common user knowledge that when forwarding an email, one need not take any additional steps to ensure an attachment remains with the forwarded message. The sender merely must click the "forward" prompt and the attachment will send. Nor does the record indicate that Mr. Coburn accidently deleted the attachment prior to forwarding the email. If he had done so, it is strange that he would send a follow-up email to Plaintiff a day later *without the attachment* while referencing the NOPE as having been forwarded to Plaintiff the prior day. *Id.* at 11, 15; *see also* Dkt. 17-3 at 35-36. Even if the attachment did not make its way to Plaintiff, the body of the email from Mr. Coburn to Plaintiff made clear that "it might well be in [Plaintiff's] interest to contest" the NOPE. Dkt. 17-3 at 36. The DAB's determination that Plaintiff was nonetheless aware of the potential need to respond, Dkt. 17-1 at 8, is supported by substantial evidence in the record. Dkt. 17-3 at 35-36 (Mr. Coburn outlines the implications of not responding to the NOPE over an email to Plaintiff).

Plaintiff's argument that Mr. Coburn acted improperly in accepting electronic service on his behalf because he supposedly was no longer representing Plaintiff also cannot survive the DAB's ruling. Without Plaintiff proffering some modicum of evidence that the OIG was made aware that Mr. Coburn no longer represented Plaintiff or, at minimum, did not have the authorization to act as his agent of service, the DAB's determination that the OIG acted properly is reasonable. *See Grossman*, 2009 WL 2973479, at *4 ("[T]he ALJ was not required to draw inferences regarding the forwarding of the notice or attorney-client communications regarding that notice in Petitioner's favor or to resolve in Petitioner's favor any legitimate dispute as to when [counsel] ceased representing Petitioner."); *see also* Restatement (Third) of the Law Governing Lawyers § 31 cmt. i (Am. L. Inst. 2022) ("For most purposes, the lawyer's apparent authority therefore continues after termination until an affected third person has enough information to put

a reasonable person on notice that inquiry into the lawyer's continuing authority is appropriate."). Applying the substantial evidence review standard, the DAB relied on more than a mere scintilla of evidence in concluding that Plaintiff retained Mr. Coburn to represent him in the exclusion proceedings and that such representation had not ended at the time the OIG served the NOPE on Plaintiff at his physical mailing address and via Mr. Coburn over email. *Shinaberry*, 952 F.3d at 120; *see also* Dkt. Nos. 17-1 at 14; 17-3 at 11-17 (describing evidence upon which the DAB reasonably relied to determine the OIG reasonably believed Mr. Coburn was a proper agent of service upon Plaintiff). Mr. Coburn in fact conveyed his belief that on February 6, 2015, a day after service of the NOPE, Plaintiff had never terminated him as his counsel. Dkt. 17-3 at 35.²

Plaintiff has not submitted sufficient evidence for this Court to remand the proceedings to HHS for further consideration. Although difficult to discern, Plaintiff appears to argue that his official complaints filed against Mr. Coburn with the D.C. Bar materially impact this case because they demonstrate the ineffectiveness of Mr. Coburn as an attorney for Plaintiff. But the alleged ineffectiveness of Mr. Coburn, standing alone, cannot insulate Plaintiff from "the consequences of the acts or omissions of this freely selected agent" in a civil matter. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). "Any other action would be wholly inconsistent with our system of

---

² While this Court will refrain from making credibility determinations in accordance with Fourth Circuit directives, *Craig*, 76 F.3d at 585, this Court nonetheless observes that despite Plaintiff's argument to contrary in his briefing, the evidence he has presented suggests that Plaintiff reached out to Mr. Coburn upon return from Pakistan in 2018 to work on this matter *pro bono*. *Compare* Dkt. 34 at 5 ("Plaintiff came in Country in April 2018. Plaintiff contacted Attorney Barry Coburn and met him in his office. Attorney Coburn offered his services and wanted new contract to represent me. Plaintiff declined his legal services.") *with* Dkt. 14-1 at 21 ("We are not in a position to work on your case *pro bono*, particularly given how things were left when you departed for Pakistan . . . . Feel free to keep us posted on the situation, and if you are in a position to engage a lawyer in the future, don't hesitate to let us know.").

representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* at 634 (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)). No new evidence presented by Plaintiff appears material to the issue of Plaintiff's failure to comply with the timing requirements of his exclusion proceedings before HHS. *See Smith*, 99 F.3d at 638 n.5 (Fourth Circuit denying remand of HHS agency appeal because the additional evidence "was not new or material"); *see also* 42 U.S.C. § 405(g) (permitting district courts to remand to HHS "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); *Craig*, 76 F.3d at 589 (applying 42 U.S.C. § 405(g) to the assessment of the HHS Secretary's findings under the substantial evidence standard).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Dkt. 18) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Amended Complaint (Dkt. 14) is DISMISSED.

The Clerk is directed to forward copies of this Order to counsel of record, enter judgment for Defendant pursuant to Federal Rule of Civil Procedure 58, and to close this civil action.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
June 1, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge

14